Opinion of the court, by
Judge Hitchcock:
The principle that the vendor has a lien upon the land sold for the purchase money, while the same remains in the possession of the vendee, or his assignee with notice, is too well established to be controverted, and it is useless to cite authorities in its support. It is founded on abstract justice.
Where the vendor relies upon the land sold, as the fund from: *33 which he shall recover his compensation, he ought not to be deprived of it. Natural equity would seem to require that before the vendee shall claim the land as his own, absolutely discharged of' all claim on the part of the vendor, hé should pay to that vendor according to the terms of his contract. The same principle of justice would extend this lien to the vendor in the case of the sale of goods and chattels. It has not, however, been'thus-extended on account of the perishable nature of the property, and on account of the difficulty of enforcing it, in consequence of the ease with which such property is transferred, and the frequent changes which take place in the right oí ownership. Sound policy, too, in a commercial country, dictates that so far as it can be done consistently with justice, possession should be taken as conclusive evidence of personal property. Under the existing circumstances ol our own state policy, it would seem to require that this principle should not be extended. Lands are measurably an article of merchandise, passing frequently from one to another, and the less they are incumbered with *such liens, the better for the community. Nor is there the same necessity for enforcing this lien as in England, and, perhaps, in some of the states of this Union. So long as the land remains in the possession of the verdee, it can be reached by execution, and the vendor has complete and adequate remedy at la’.;. If it has been assigned with a view to defraud the vendor, such assignment would be void under the statute for the prevention of frauds and perjuries.
Although this lien exists in favor of the vendor, yet if it can be shown that he depends upon, takes, or looks to any other individual collateral security, it ceases, or, more properly speaking, it never attaches. It has been held that by taking a note or bond, the lien is discharged, inasmuch as it shows that the vendor does not rely upon the land itself, but upon the personal security of the vendee. Amb. 724. The doctrine is now well settled, however, that the taking of a covenant, note, or bond does not interfere with the lien where such covenant, note, or bond is executed by the vendee. 1 Bro. C. L. 420; 2 Ves. 389; Sug. Vend. 354, 355.
But “if the vendee takes a distinct and independent security for the purchase money, his lien on the estate is gone, as .it clearly appears he did not trust to the estate as a security for his money.” Sug. Vend. 253; 6 Ves. 483.
So if a vendor take a mortgage of the estate sold for a part of *34 the purchase money, he loses his equitable lien for the balance, inasmuch as he thereby evinces his election, that the estate should be charged with part only. Sug. 323; 1 Ver. 281. In truth, any act done, any independent collateral security taken, discharges the lien. And for this obvious reason, it clearly evinces that the vendor relied on something, other than the estate from which to recover the purchase money. It is immaterial whether this be personal or other security. That collateral personal security operates to discharge the lien, is expressly decided in the case of Brown and others v. Gillman, 1 Mason, 214. The judge says, u on a careful examination of all the authorities, I do not find a •single case in which it has been held, if the vendor take a personal collateral security, binding others, as well as the vendee, as for instance a bond or note, with a security or indorser, or a collateral security, by way of pledge or mortgage, that under such circumstances a lien ^exists upon the land itself.” This case was decided in the Circuit Court of the United States in Massachusetts. It was afterward taken to the United States Supreme Court, and the same principle there settled. 4 Wheat. 255.
The case of Elliot v. Edwards, 2 Bos. & Pul. 181, may at first view seem to controvert this position; but in looking into that case, it will be found that there was an express stipulation in the contract, that the premises should not be assigned or underlet, until the whole of the purchase money was paid, without an express license, in writing, under the hands of the vendor and the security.
Now, what are the circumstances of the case before the court? Williams sold the premises to Connelly, and received a part of the purchase money! He took no mortgage to feecure the paymont of .the balance; but he took notes, or single bills, signed by Connelly and Beatty. Why did Beatty sign these notes ? Counsel for the complainant says it was merely a voluntary act, in no way provided for by the contract. But in the absence of proof, we can not take that view of the subject. Beatty was received by Williams as security for the payment of the money, which shows that the latter did not rely upon the land itself, as clearly as.the taking of a pledge •or mortgage of any other property would have done. If the case •of Brown v. Gillman was correctly decided by the Circuit and Supreme Courts of the United States, then, by taking this security, .and by parting with the title, Williams lost his equitable lien. The *35 ■circumstance that Beatty afterward became insolvent, can make no ■difference; the lien once gone, is gone forever. We are satisfied with the law as laid down in that case, and believe it to be decisive ■of the question now before the court.
But there is a class of cases where a different principle prevails, and where the vendor retains a lien, notwithstanding he may have taken either personal or other collateral security. Where the title remains in the vendor, and the purchaser is in default for the non payment of the whole, or any part of the purchase money, the vendor will not be compelled to part with his title until the purchase money is paid. And the circumstance of taking the collateral security will not vary the case. It was upon this principle that the case *of Tiernan v. Beam and others, 2 Ohio, 383, was decided. In that case, Tiernan, as a creditor of Beam, was seeking to subject two quarter sections of land to sale, for the satisfaction of a judgment in his favor against Beam. Beam had only an equitable interest in the lands, having purchased them, together with others, from Newman. The purchase money had not all been paid, although- the whole was due; but enough had been paid to meet the price of these two quarter sections. No legal title had been transferred to Beam. The principle matter in dispute was, whether the court would compel the defendants, or those holding the legal title, to part with the same, until the purchase money for all the land was paid. It was holden by the court, that Tiernan stood in no more favorable situation than Beam. And further, that upon the application of Beam, Newman, or those holding the legal title, •could not be compelled to part with the same until the balance of the purchase money was paid, that balance being then due. This decision, we apprehend, is consistent with the plainest principles of justice.
Where the vendor has retained the title in his own hands, where, by the terms of the contract, he is to retain it until the purehaso money is paid, to compel him to part with it before the payment, Because he has taken independent collateral security, would be manifestly unjust. It would, in truth, be changing the nature of the contract. It is the duty of this court to enforce, not to make, or change the contracts of parties.
The judge who delivered the opinion of the court, had this state of the case in view. Such was the nature of the case then under consideration. In delivering that opinion, he says, “that the ven *36 dor has a lien on the premises sold, for the .purchase money, and that his lien is not affected by conveying the premises, and taking a note or bond, with personal security, for the money.” This is correct, as it respected the case then before the court. There had been no conveyance by deed, transferring title, although there was a title bond or contract. And we know, according to the custom, of the country, this is so far a conveyance, that under it the purchaser takes possession. But if it was intended *to use the-word conveyance, in its strict technical sense, as transferring title, we must think the position is not warranted either by authority or the well-known principles of equity. It is not without great, deliberation, and much hesitation, that we have come to this conclusion. The well-known character of the judge who delivered' that opinion, for legal and general knowledge, for integrity and purity of purpose, entitles his dictum, much more his deliberate opinions, to the highest consideration. The authorities cited in support of this opinion are 9 Ves. 209; 1 Johns. Ch. 308; 3 Eq. Cas. 682; 1 Ver. 267; 3 Atk. 272; 6 Ves. 752; 3 Bibb, 183; 2 Wash. 142; B. C. R. 301; 2 Ves. 622.
Upon a careful examination of these authorities, it is believed that no one of them supports the broad position, as laid down by the judge.
In the case cited from 6 Ves. security in stock had been taken. The court expressly declines deciding the question, whether every security taken would discharge the lien of the vendor, holding,, however, in that.case, that it had been discharged.
The case in 9 Ves. is a case upon marshaling assets. In tho course of the discussion a question is made as to the lien of the-vendor, but nothing is decided which is applicable to the question now under consideration. In that ease, too, it is clear that the-title of the premises had not been transferred to the vendee.
In the case in 2 Ves. 622, the question is not raised.
The case in 3 Atk. 272, is somewhat similar to the one in 9 Ves., and so far as respects the question now under consideration, settles nothing farther than this, that as between vendor and vendee, the former has a lien upon the premises for the purchase money.
The chancellor in 1 Johns. Ch. 308, decides that taking a note for the purchase money does not discharge the lien; but nothing is said as to tho effect which would be produced'by taking such note with, independent personal security.
*37 Neither the case reported in 3 Bibb, nor the case of Cole v. Scott, 2 Wash. 141, support the position of the judge in the case of Tiernan v. Beam, etc. In the case of Cole v. Scott, the title was in the vendor, and the idea seems to be ^intimated, that if security had been taken, even under such circumstances, the lien would be gone. The president of the court says, “The doctrine that a vendor of land not taking security, nor making a conveyance, retains a lien upon the property, is so well settled as to be received as a maxim. Even if he hath made a conveyance, yet he may pursue the land in the possession of the vendee, or a purchaser, with notice. But if he hath taken a security, or the vendee hath sold to .a third person, without notice, the lien is lost.”
Taking these cases singly or collectively, they go ho further to establish the principle that a vendor, taking an independent collateral security, although he parts with-the title, has an equitable lien upon the land in the possession of the vendor, or his assignee, with notice, for the purchase money. A principle so well established, according to the opinion of the court in Virginia, as to be received as a maxim. There is nothing in these cases to contravene the opinion of the Supreme Court of the United States in the case of Brown and others v. Gillman, before referred to.
The principal reliance of the counsel for the complainant is upon the case of Tierman v. Beam, etc.
As before remarked, we believe that case to have been correctly decided, and we should feel ourselves bound by its authority. But we are unwilling bo extend it beyond a case similarly situated. For the reason already urged, and from the authorities cited, we are led to the conclusion that the broad position assumed by the judge in that case was incidentally taken. It is not, in our view, ■consistent with either principle or authority.
Such being the opinion of the court, it is unnecessary to go into :a critical examination of the testimony, or of the other points, made by counsel. The complainant, by his own showing, has no lien upon the land; he is entitled to no decree; his bill must te dismissed with costs.